**ELECTRICAL CONTRACTORS ASSOCIATION OF THE DISTRICT OF COLUMBIA, Inc., et al., Plaintiffs,**

**v.**

**Robert E. McLAUGHLIN et al., Defendants.**

**No. 746-57.**

United States District Court
District of Columbia.

July 29, 1957.

654

Maurice Friedman, Washington, D. C., for plaintiffs.

John A. Earnest, Washington, D. C., for defendants.

THOMAS, District Judge.

This action seeks a declaratory judgment or an injunction against the Board of Commissioners, District of Columbia, under the jurisdiction of this court's equity powers and Title 28, Section 2201, of the United States Code. Plaintiffs seek to have declared inoperative Order No. 57–382 of the defendants which order requires that any application filed for a permit for any proposed electrical installation in which the current carrying capacity exceeds 200 amperes or the electrical potential exceeds 240 volts between terminals or phases, shall be accompanied by plans and computations prepared and signed by a professional electrical engineer registered in the District of Columbia as provided in the Professional Engineers' Registration Act of 1950. The factual background was presented to the court by stipulation.

Findings of Fact.

1. The plaintiffs consist of the Electrical Contractors Association of the District of Columbia, Inc., a corporation, and nine of its members, all of whom are electrical contractors and master electricians licensed and bonded under the District of Columbia Electrical Licensing and Bonding Regulations. Two of the individual defendants are members of the Electrical Examining Board created under said Regulations. They bring this action for themselves and other contractors and electricians similarly situated.

2. In 1944, Congress passed an act authorizing the Commissioners to adopt and promulgate regulations governing the electrical industry in the District of Columbia; and in April 1946, the Commissioners promulgated the Electrical Licensing and Bonding Regulations,[1] which have been amended from time to time, and whch are presently in full force and effect.

3. These Regulations (see Sections 101 and 102) have as their purpose the "* * * practical safeguarding of the public and the District of Columbia from hazards involved in the installation, maintenance, or repair of work, apparatus, equipment, fixtures and appliances coming within the scope of the Acts of Congress * * *" And the scope of said "* * * regulations is limited to electrical work within the purview of the Electrical Code, D.C."

4. An examination of these Regulations reveals that they not only rigidly control the licensing and bonding of electrical contractors and the various categories of electricians, but also that an applicant for a license must demonstrate his qualification and fitness by displaying a thorough knowledge of the Electrical

1. Exhibit A.

Code through written examinations which

" * * * include such questions, diagrams, etc., sufficient to thoroughly demonstrate to the examining board that the applicant has the experience and knowledge of regulations and construction methods considered necessary to engage in the class of occupation for which he has filed a license application." (Regulations, Section 611.)

5. Section 623 of these Regulations provides that a master electrician must satisfactorily take an examination which includes:

"A practical knowledge of the Electrical Code and regulations applicable to electrical installations, wiring methods, types and current carrying capacity of conductors, conductor and equipment protection, standard wiring systems and diagrams; and the applicant shall demonstrate to the examining board his ability to comprehend and interpret electrical wiring plans and drawings, to maintain electrical installations, and to repair apparatus, equipment, fixtures and appliances in accordance with the Electrical Code and established standards * * *"

6. A license issued by the District to a master electrician pursuant to the above Regulations, bears the stamped or printed legend "Limitations None."

7. It is therefore apparent that the Commissioners, acting under clear legislative authority specifically granted by Congress, have adopted and kept in force regulations to protect the District and the public by granting licenses to practice the electrical trade or business only to those who are able to demonstrate their qualification and fitness, and who must furnish substantial bonds [2] to protect both the District and the public.

8. Since at least 1927, the Electrical Code [3] for the District contained a pro-vision (Section 1143) under the chapter dealing with permits, in part as follows:

"1143. Permits for Work Inside and Outside Buildings.—

"a. Plans and specifications showing in detail the electrical system to be installed in any building shall be submitted in each case as a part of the application for permit, if so required.

"b. Such plans and specifications shall be submitted as a part of every application for permit to install electrical work in any apartment house, hotel, theater, or other place of public assembly."

9. Paragraph 18 of the stipulation filed herein sets out:

"One of the purposes for the promulgation and adoption of the foregoing Section 1143(a) and (b) in 1927, and its continuing purpose until the promulgation of Order No. 57–382, was to enable the Electrical Division of the District of Columbia Building Department to understand applications for electrical permits in order to ascertain whether such proposed work was designed to be done in accordance with requirements of existing electrical code regulations."

10. The plans and specifications called for under Section 1143(a), above quoted, are incidental to an application for a permit, and that they are primarily required for a better understanding of a permit application by District officials seems clear.

11. In 1950, Congress enacted two bills, one to regulate the practice of architecture (Title 2, Chapter 10, D.C. Code, 1951 Ed.), and the other regulating the profession of engineering (Title 2, Chapter 18, D.C.Code), known as the "Professional Engineers' Registration Act."

12. Subsequently, in 1951, the Commissioners revised and amended the Electrical Code, known as the 1951 Electrical

2. Regulations, Sections 713 and 723. Exhibit A.

3. Exhibit B.

Code,[4] again adopting the identical Section 1143 which had been in existence since 1927.

13. On April 26, 1951, the Deputy Director of Inspection of the District Building Department circulated an inter-office memorandum,[5] which attempted to place restrictions and limitations on obtaining permits, except in limited areas of construction work, unless the accompanying plans were signed either by a registered architect or by a registered professional engineer. This memorandum was not publicized and apparently was not adopted by the Commissioners as a regulation, at least not before February 28, 1957.

14. Pursuant to notice,[6] on October 22, 1956, the Commissioners conducted a hearing " * * * to consider Electrical Plans Requiring Preparation by Professional Engineers—1951 Electrical Code." The proposed change was to amend Section 1143 of the 1951 Electrical Code (cited above, paragraph 8 hereof) as follows:

"Page 28, Section 1143—Delete paragraphs 'a' 'b' and 'c' and substitute in lieu thereof the following:

"1143.1 Plans and computations of estimated loads showing in detail the electrical system and all equipment to be installed in any building shall be submitted as part of the application for a permit where required and as provided further in this Section.

"1143.2 Plans and computations shall be prepared and signed by a professional electrical engineer, registered in the District of Columbia, as provided in the Professional Engineers' Registration Act of September 19, 1950, Public Law 789 [64 Stat. 854] for any proposed installation in which the capacity is in excess of 150 kva or 600 volts.

"The above excess of 150 kva when applied to additional loading of an existing installation of any size refers only to that portion being added, except where the added loading necessitates increasing the size of the existing installation to above 150 kva."

15. It is apparent that the proponents of the amended Section 1143 were of the opinion that it was necessary to establish an arbitrary limitation on the preparation of plans by master electricians in order to avoid what seemed to them otherwise to be a conflict between the Electrical Code and the Professional Engineers' Registration Act (Title 2, Chapter 18, D.C.Code). The proposed change was not based on any public interest, health, welfare or safety factors. These were not, and are not, present or involved.

16. On February 28, 1957, the Commissioners adopted Order No. 57–382, amending Section 1143 of the 1951 Electrical Code, in pertinent part as follows:

"a. Plans and computations of estimated loads showing in detail the electrical system and all equipment to be installed in any building shall be submitted as part of the application for a permit when required and as provided further in this Section.

"b. Plans and computations shall be prepared and signed by a professional electrical engineer, registered in the District of Columbia, as provided in the Professional Engineers' Registration Act of September 19, 1950, Public Law 789 [64 Stat. 854], for any proposed installation in which the current carrying capacity exceeds 200 amperes or the electrical potential exceeds 240 volts between terminals or phases." [7]

17. The net result of this Order was to adopt an arbitrary cut-off point of 200 amperes, considerably less than the arbitrary cut-off point of 150 kva or 600 volts proposed by the Commissioners at the hearing of October 22, 1956.

4. Exhibit B.
5. Exhibit D.
6. Exhibit E.
7. Exhibit C.

18. Section 2205 of the 1951 Electrical Code provides that: "If required by the Director of Inspection a diagram showing feeder details shall be supplied previous to installation." The Commissioners have not attempted to amend this section by requiring a professional registered electrical engineer to prepare or certify such diagrams.

19. The preparation of plans and computations required by the District incidental to obtaining a permit to do electrical work by a licensed and bonded electrical contractor or master electrician does not constitute the "practice of engineering" within the purview of Title 2, Chapter 18 of the D.C.Code.

20. The defendants do not question or impugn the ability, competence or qualifications of the individual plaintiffs, and others similarly situated, to prepare the plans and computations of the original or amended Section 1143 of the Electrical Code.

21. The court is satisfied that Order No. 57–382 (amending Section 1143 of the 1951 Electrical Code) is unreasonable, arbitrary and capricious; and said Order is not required under the District of Columbia Code, either by Title 1, Section 244 (giving the Commissioners discretionary powers to require bonds and license examinations for certain businesses), or by Title 2, Chapter 18 (regulating the practice of engineering). And the court further finds that said Order No. 57–382 is unduly burdensome and impractical, and imposes unnecessary inconvenience, hardship and expense, both upon the electrical trade or business as such and the consuming public, with no benefits to be derived therefrom, except the possible fees which might inure to professional registered electrical engineers.

22. The individual plaintiffs and others similarly situated must obtain permits from the District of Columbia government before doing any electrical work, otherwise they are not permitted to do such work; and, if it is attempted without permit, they will be subjected to the threat of arrest, fines, and/or imprisonment. Alternatively, they must cease practicing their trade or business.

23. Said Order No. 57–382 is a final administrative action of the Commissioners, from which no further administrative review or appeal lies.

24. There is no conflict between Title 1, Section 244,[8] and the Electrical Licensing and Bonding Regulations promulgated thereunder on the one hand, and the Professional Engineers Registration Act [9] on the other. There is no warrant in the law for the adoption of the Commissioners' Order No. 57–382, amending Section 1143 of the 1951 Electrical Code.

### Conclusions of Law.

(a) In order to be valid, regulations of the category under consideration here must be reasonable and not arbitrary, and they must have a tendency to promote the public health, safety or general welfare. If such a regulation is unreasonable and arbitrary and bears no relationship to the public health, safety or general welfare, resulting in discrimination for no lawful reason, it is the duty of the court to invalidate such exercise of power. D. J. Dunigan, Inc., v. District of Columbia, 59 App.D.C. 384, 44 F.2d 892.

(b) The defendants' Order under consideration bears no relationship to the factors of public health, safety or general welfare, and results in discrimination against the electrical trade or business, and inevitably increased costs to the consuming public, for no lawful reason.

(c) The defendants waited for more than six years after the passage of the Professional Engineers' Registration Act (Title 2, Chapter 18, D.C.Code) before being persuaded to the view that there

8. D.C.Code, Title 1, Sec. 244. Additional powers of Commissioners.

9. D.C.Code, Title 2, Chapter 18.

was some claimed conflict between that law and the 1951 Electrical Code (promulgated after the Engineers' Act), particularly Section 1143 thereof which had been in continuous existence for at least thirty years.

■ (d) There is no conflict or ambiguity between the Professional Engineers' Registration Act and the 1951 Electrical Code. Having in mind that Congress is the legislative body for the District of Columbia, that pursuant to congressional action the Commissioners adopted regulations governing the licensing and bonding of the electrical industry and trade, that Section 1143 of the Electrical Code was in existence in 1950 (and since 1927) when Congress enacted legislation regulating architects and engineers, without attempting to repeal said Section 1143, it is the court's conclusion that no repeal of that section was intended by implication.

■ (e) It is worth noting that Congress included a section dealing with exemptions under the Professional Engineers' Registration Act (Title 2, Section 1810, D.C.Code). Under (f) there is exempted from the act "The practice of any other legally recognized profession." Certainly the occupation of an electrician is legally recognized and involves scientific learning and knowledge for a proper understanding of such a calling. The preparation by duly licensed master electricians of plans, diagrams and computations under Sections 1143 and 2205 of the Electrical Code does not constitute the "practice of engineering" as contemplated in the Professional Engineers' Registration Act.

(f) The defendants' Order No. 57–328, dated February 28, 1957, is clearly illogical, unreasonable, arbitrary and capricious, and is without basis in law.

(g) The plaintiffs are entitled .to relief in the form of a declaratory judgment and an appropriate order will be entered herein. The alternative relief sought by way of injunction is denied.